IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY C. CLAYTON,

   Plaintiff,

    v.

MARCUS WALTON, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2437-TWT

## ORDER

This is a civil rights action. It is before the Court on the Defendants Walton and Seay's Motion to Dismiss [Doc. 17] the Amended Complaint. For the reasons set forth below, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 17]. The Motion to Dismiss [Doc. 10] the Original Complaint [Doc. 1] is DENIED as moot.

### I. Background

The Plaintiff Mary Clayton went to Georgia Tech's Bobby Dodd Stadium on September 25, 2010, to attend a football game. (Am. Compl. ¶¶ 11, 17.) The Defendants Walton, Seay, and McKenzie are Georgia Tech police officers who were present and in uniform at the Stadium on September 25. (Am. Compl. ¶¶ 26, 28.) The Defendant Sida is a Contemporary Services Corporation employee who was present in a supervisory capacity over security at one of the entrances of the Stadium on

September 25. (Am. Compl. ¶ 18.) Prior to entering the Stadium, the Plaintiff purchased a Chick-fil-A sandwich from a vendor outside the gates of the Stadium. (Am. Compl. ¶ 17.) She attempted to enter the Stadium with the sandwich and with two bottles of water brought from home. (Am. Compl. ¶ 17.) At one of the entrance gates of the Stadium, the Plaintiff was informed by stadium security personnel that she was not allowed to bring the sandwich or the bottles of water into the stadium. (Am. Compl. ¶ 20.) The Plaintiff then walked away from the gate through the crowd to find a trash receptacle, where she discarded the three items. (Am. Compl. ¶ 21.) The Plaintiff then went back to the entrance gate and attempted again to enter the Stadium. (Id.) Upon passing through the entrance gate, the Plaintiff alleges that Sida proclaimed to unidentified security staff that she needed to be stopped as she was secreting the sandwich on her person. (Am. Compl. ¶ 22.) The Plaintiff alleges that she denied hiding the sandwich, opened her purse for inspection, and offered to pull out the pockets of her jeans, but that Sida stated that she needed to be searched because she had been seen putting something in her crotch. (Am. Compl. ¶ 24.)

Then Seay was called to the scene. (Am. Compl. ¶ 26.) The Plaintiff alleges that Sida informed Seay that the Plaintiff had been observed putting something in the crotch of her pants after being turned away for having a food item in her purse. (Id.) Seay asked the Plaintiff if she had anything hidden on her person and that if she had

anything hidden, she should take it out or be subject to search. (Am. Compl. ¶ 27.) The Plaintiff denied secreting anything on her person. (Id.) Seay then contacted Walton, also a uniformed police officer, and allegedly requested a female officer to perform a search. (Am. Compl. ¶ 28.) Walton radioed McKenzie to come to the scene to conduct a search. (Id.) When McKenzie arrived, Walton directed her to take the Plaintiff to another location to search the Plaintiff. (Am. Compl. ¶ 29.) The Plaintiff asked Walton whether she would miss kick-off and Walton told her that she would. (Am. Compl. ¶ 31.)

McKenzie directed the Plaintiff to accompany her to a ladies' restroom inside the Stadium. (Am. Compl. ¶ 32.) Two female EMS paramedics, Stephanie Steadham and Robin Washburn, accompanied them. (Id.) The Plaintiff alleges that once they reached the restroom, McKenzie ordered the Plaintiff into a handicap stall and once both were inside, locked the door and barred the Plaintiff's exit, with the two paramedics outside the door. (Am. Compl. ¶ 33.) The Plaintiff alleges that she was ordered by McKenzie to remove her pants for a visual inspection. (Am. Compl. ¶ 34.) The Plaintiff alleges that she began crying and complied. (Id.) The Plaintiff further alleges that McKenzie ordered the Plaintiff to lift her shirt and expose her breasts, which the Plaintiff did. (Am. Compl. ¶ 38.) The Plaintiff alleges that McKenzie found nothing, unlocked the stall door and allowed the Plaintiff to leave. (Am. Compl. ¶

40.) The Plaintiff does not allege that McKenzie ever touched her. The Plaintiff rejoined her sister in the stadium stands but eventually left the football game because she was distraught. (Am. Compl. ¶ 42.)

On September 28, 2010, McKenzie prepared a statement regarding the events of September 25, 2010. (Am. Compl. ¶ 44.) In her statement, McKenzie wrote that her "intent was to perform a basic pat down of the female individual over her clothing" and that "[to her] surprise, the individual then without instructions unbuttoned her pants and lowered them to the floor and lifted her shirt." (Am. Compl. ¶¶ 46-47.) On October 14, 2010, Melanie Hickey, a Sergeant with the Georgia Tech police force, conducted an investigation into the event. (Am. Compl. ¶ 48.) The Plaintiff alleges that Hickey possessed written statements from EMS Paramedics Steadham and Washburn indicating that McKenzie had given verbal commands for the Plaintiff to remove her clothing. (Am. Compl. ¶ 49.) The Plaintiff alleges that despite the information, Hickey concluded that the Plaintiff's complaint was "[n]ot-sustained." (Am. Compl. ¶ 51.)

The Plaintiff filed a Complaint [Doc. 1] against the Defendants on July 26, 2011, alleging that her civil rights under the Fourth and Fourteenth Amendments were violated as a result of an unlawful arrest, imprisonment, strip search, and conspiracy to cover up the conduct by an inadequate investigation; she seeks money damages

under 42 U.S.C. § 1983. The Plaintiff filed an Amended Complaint on September 30, 2011 [Doc. 12]. On October 17, 2011, the Defendants Walton and Seay filed this Motion to Dismiss the claims against them [Doc. 17].

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim

and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

### III. Discussion

A. Failure to State a Claim

Section 1983 provides a private cause of action for persons whose rights under the federal Constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). To establish personal liability for a section 1983 violation, plaintiffs must show (1) conduct committed by a person acting under color of state law[1] (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986); see also Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996).

The Plaintiff states that Walton and Seay violated her rights under the Fourth and Fourteenth Amendments by holding her for the purposes of a search when there

---

[1] The Plaintiff shows that Walton and Seay committed the alleged acts while acting under color of state law. The Georgia Tech Police Department is a State agency. Officers Walton and Seay were present at the Stadium in their roles as Georgia Tech police officers, wearing their uniforms. The Defendants do not contest that they were acting under color of state law during the incident in question.

was no probable cause that she had violated the law. To the extent that the Plaintiff is attempting to state a substantive due process claim under the Fourteenth Amendment based on these facts, the Due Process Clause does not provide a remedy for the Plaintiff. The Supreme Court has expressed reluctance to expanding the concept of substantive due process. The Court limits the concept traditionally to matters relating to marriage, family, procreation, and the right to bodily integrity. Albright v. Oliver, 510 U.S. 266, 271-72 (1994). Accordingly, the Supreme Court has held that the Due Process Clause does not provide relief when another constitutional provision provides an explicit textual source for protection of a substantive right. Id. at 273-74; Graham, 490 U.S. at 395. For instance, unlawful search and seizure claims fall squarely within the protections of the Fourth Amendment. Albright, 510 U.S. at 274; see also Dorsey v. Wallace, 134 F. Supp. 2d 1364, 1374 (N.D. Ga. 2000 ); Sims v. Glover, 84 F. Supp. 2d 1273, 1287-88 (M.D. Ala. 1999). The Plaintiff has not indicated how her due process rights are different from her Fourth Amendment rights in this case. Because the Fourth Amendment addresses the rights of individuals to be free from unlawful searches and seizures, there is no basis for invoking the more generalized notion of due process. See Graham, 490 U.S. at 395. The Fourteenth Amendment claims are dismissed.

Turning now to the Fourth Amendment claims, the Court is faced with facts

sketching the outline for claims against the Defendants for an unconstitutional search and an unconstitutional seizure. Whether or not the search itself was conducted reasonably is not properly before the Court on this Motion to Dismiss, as the Plaintiff does not contend that the Defendants directed or participated in the execution of the search. Personal participation or the exercise of control or direction in the constitutional violation is required for section 1983 liability. See Gilmere v. City of Atlanta, 774 F.2d 1495, 1504 (11th Cir. 1985); Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986); Goebert v. Lee County, 510 F.3d 1312, 1331-32 (11th Cir. 2007) (no vicarious liability for section 1983 claims).

However, the Plaintiff alleges that the Defendants did request that McKenzie conduct a warrantless search of the Plaintiff to determine if she was smuggling food into the Stadium. "The United States Supreme Court has consistently held that under the Fourth Amendment a search conducted without a warrant issued upon probable cause is *per se* unreasonable...subject only to a few specifically established and well-delineated exceptions." Johnston v. Tampa Sports Authority, 530 F.3d 1320, 1326 (11th Cir. 2008) (internal quotation marks omitted). One of these exceptions is consent. The Plaintiff states that she did not give express consent, but it is possible that she impliedly consented to the search. The Eleventh Circuit recently found that a man who attended multiple NFL football games with the knowledge that he would

be subject to a pat-down search outside the stadium, and who verbally objected to the search each time but continued to allow security to conduct the search because he wanted to attend the game, impliedly consented to the search.[2] Johnston, 530 F.3d 1320. To determine whether consent was voluntarily given, the Court must make a case-by-case determination according to the totality of the circumstances. Johnston, 530 F.3d at 1326. The following factors give the Court guidance as to whether implied consent was given to search: "(1) whether the defendant was aware his conduct would subject him to search; (2) whether the search was supported by a 'vital interest;' (3) whether the searching officer had apparent authority to search and arrest; (4) whether the defendant was advised of his right to refuse; and (5) whether refusal would result in a deprivation of a benefit or right." Id. The Court will not decide this factual question on this Motion to Dismiss. Another exception to the general rule prohibiting warrantless searches is administrative search procedures. Some courts have upheld as constitutional preadmission stadium searches, like airport and courthouse searches, subject to a three-factor balancing test that weighs (1) the public necessity, (2) the efficacy of the search, and (3) the degree and nature of the intrusion involved. See Collier v. Miller, 414 F. Supp. 1357 (D.C. Tex. 1976); Jensen v. City

---

[2] Obviously there are factual differences between this case and Johnston. However, it would be inappropriate to elaborate on them or even to presume to know all of them on a motion to dismiss.

of Pontiac, 113 Mich. App. 341 (1982); United States v. Edwards, 498 F.2d 496 (2d Cir. 1974). Again, it would be inappropriate for the Court to engage in this balancing test on this Motion to Dismiss.

Additionally, the Defendants could not force a search upon the Plaintiff, effectively "seizing" her so that she did not have the choice to leave the Stadium rather than be searched. The Plaintiff contends that Walton and Seay did "seize" her. She states that she was not told that she was free to leave the Stadium rather than be searched and that "from the show of authority from the defendants, [she understood] that she had no choice but to obey the orders of the defendants." (Am. Compl. ¶ 29.)

However, a seizure has not taken place when a "reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 436 (1991). This is an objective test that does not rely on the subjective beliefs of the allegedly seized individual. Brendlin v. California, 551 U.S. 249, 260 (2007) (citing United States v. Mendenhall, 446 U.S. 544 (1980)). The Court finds that a reasonable person would realize that he was free to decline the officers' request to be searched so long as he did not attempt to enter the Stadium. As the Plaintiff has pointed out, smuggling food into a stadium is not a violation of federal or state law; it is only a violation of stadium rules. (Am. Compl. ¶¶ 23, 25.) A reasonable person would know that smuggling food was only a violation of stadium

rules, and correspondingly know that a violation of this stadium rule could at worst result in one's expulsion from the Stadium.

### B. Qualified Immunity

Walton and Seay are protected from all of the Plaintiff's claims by qualified immunity. Qualified immunity shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is a question of law to be decided by the Court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Walton and Seay find protection in qualified immunity as the Court cannot find that they clearly or knowingly violated the law. Whether the Plaintiff impliedly consented to be searched is a close enough factual determination that the Court cannot find that they were "plainly incompetent" in making that determination. See Courson, 939 F.2d at 1487. "The protection of qualified immunity applies regardless of

whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations and citations omitted). If there was a mistake of fact it was objectively reasonable and thus there is no need for discovery. See id. at 231-32 ("[W]e have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal quotations and citations omitted). The Plaintiff did not object to the search, and as previously discussed, it would be reasonable for the Defendants to believe that she knew that she had the right to object.

The Plaintiff argues that qualified immunity is defeated because the Defendants were not acting in response to the suspected breach of a federal or state law. The Plaintiff states that because there was no suspected violation of federal or state law (only stadium rules), there was no probable cause to search the Plaintiff (because probable cause requires the reasonable belief that the suspect has committed or will commit an offense), and thus the Defendants breached clearly established law by ordering a search. This argument fails because the Defendants had reason to believe that the Plaintiff had impliedly consented to a search.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Motion to Dismiss [Doc. 17]. The Defendants Walton and Seay are dismissed from this action.

SO ORDERED, this 16 day of December, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge